The State of Mississippi *v.* Mayes.

THE STATE OF MISSISSIPPI *vs.* DANIEL MAYES.

The act of 1738, (Pamphlet Acts, 269,) authorizing the governor of the state, upon certain conditions, to procure the discount of notes given for the purchase of lots in the city of Jackson, and to transfer such notes to the bank discounting the same, together with the liens or mortgages taken to secure the payment of the same, conferred upon the governor no authority to bind the state by his indorsement of such notes.

The act of 1841, (Pamphlet Acts, 283,) authorizing the auditor of public accounts to rescind' contracts for the purchase of lots in the city of Jackson, in those cases in which none of the purchase-money had been paid to the state, and he was satisfied that the purchasers and their sureties were insolvent, applied only to the cases expressly specified in the act, and did not authorize the auditor to cancel a contract for a lot, the purchaser of which was not insolvent, and whose note was not, at the date of the rescission, the property of the state.

Therefore, where the note of a purchaser of a lot in Jackson was discounted by the Mississippi Union Bank, and transferred to the bank by the governor; and the auditor afterwards rescinded the contract with the purchaser, in part consideration of the relinquishment of a large claim against the state; and Mayes purchased the note at a sale of the assets of the bank, made by trustees who were appointed after judgment of forfeiture against it, and filed his bill against the state to recover the amount of the note; it was *held*, that the state was not liable upon the indorsement of the governor, or for the unauthorized action of the auditor in the premises; and the bill was dismissed upon demurrer.

IN error from the superior chancery court; Hon. Stephen Cocke, chancellor.

The facts of the case are sufficiently stated in the opinion of the court.

*Glenn,* attorney-general, for plaintiff in error.

*Potter,* for defendant in error.

Mr. Justice FISHER delivered the opinion of the court.

The bill in this case states, that on the 28th day of November, 1838, Manship & Ross purchased of the state, lot No. 8, in square No. 4 north, in the city of Jackson, at the price of $1900, payable in three annual instalments, for which they executed their notes with one James Smith, as security, payable to Alexander G. McNutt, as governor, and his successors in office.

The note first falling due, the one now sued on, was discounted some time in the year 1839, by the Union Bank of the State of Mississippi, upon the indorsement of the governor, and the money raised thereon was paid into the treasury of the state.

The bill further alleges, that on the 14th day of February, 1843, the auditor entered into an agreement with Manship & Ross, by which the three notes were cancelled, and the contract for the purchase of said lot rescinded; that Manship & Ross held a large claim against the state for painting, &c., and as part of the inducement to rescind the contract for the purchase of said lot, released the state from the payment of said claim.

It is also alleged, that at the        term of the circuit court of Hinds county, judgment of forfeiture was pronounced against the Union Bank of the State of Mississippi, and trustees were appointed, in pursuance of the statute of 1846; that in the month of October, 1847, said trustees sold at public sale at Raymond the note now in controversy, when the complainant in the court below became the purchaser.

To this bill the state filed a general demurrer, which was

overruled by the court below, and this writ of error prosecuted by the state to said judgment, to this court.

The facts averred in the bill are all to be taken as true, and the question for our consideration is, Whether they establish a liability against the state to pay the amount of the note sued on, and interest.

If such liability exist, it is either by virtue of the indorsement of the note by the governor, or the cancellation of the contract by the auditor. This makes an examination of the law under which each of these officers of the state acted necessary, and we will first examine whether a liability was created by the governor's indorsement of the note.

The statute of 1838, p. 269, required the secretary of state, the auditor of public accounts, and the treasurer of the state, to survey and lay off into lots all the land embraced in a dona- tion of the general government, for a seat of government of this state. After said survey was completed, they were required to sell, or to appoint an agent to sell said lots, upon a credit of one, two and three years, taking notes with security, and re- serving a lien on said lots for the purchase-money. We have merely glanced at this part of the statute to show the manner in which the contract was made, and the security required from purchasers of lots. By the fifth section of said act, the governor or his successor in office might transfer the notes taken for the sale of said lots, together with the liens or mortgages, taken to secure the final payment thereof to any banking insti- tution of this state ; and the said banking institution might discount the same " at a rate of per centum per annum," to be agreed upon by the governor, and the president and directors of said banking institution, not exceeding ten per centum. The act also provides that the money raised upon said notes should be paid into the treasury of the state, and kept and known as the fund for public buildings in the town of Jackson, upon which the treasurer should check to discharge any audited claim for the erection of the state-house, or the penitentiary of the state. We have stated fully the law under which the gov- ernor acted, and it only remains to be seen how far he could bind the state by his indorsement of the note in this case. The

The State of Mississippi *v.* Mayes.

law merely conferred upon him authority to transfer the note, lien, or mortgage to a banking institution in the state at a discount not greater than ten per cent., and gave him no authority to bind the state by his indorsement. The law allowed him to convert the note into money, and prescribed the terms upon which the conversion might take place. The state is not therefore liable upon this indorsement.

We will now notice the other question, Whether the state was made liable by the cancellation of this contract by the auditor.

The act of 1841, p. 283, provides that the auditor shall be authorized to cancel and rescind, upon the application of any person or persons who have purchased lots in the city of Jackson, any contract in regard to the same ; provided, however, that the auditor must be satisfied that all applicants under the provisions of this act, and their security or securities are insolvent. The act further provides, that no contract shall be rescinded where any portion of the purchase-money has been paid to the state. Under this law the auditor could make no contract to cancel or rescind a contract with the purchasers of lots, unless the state was at the time the owner of the note or notes given by the purchasers. When the governor transferred the note, lien, or mortgage in this case, the state from that moment ceased to have any interest in the same.

It was not in the power of the auditor to cancel a note of which the state was not, at the time, the holder. In his action under this statute, he could only represent the state in respect to notes not transferred.

The complainant may have a right to pursue his remedy upon the lien against the lot. We do not, however, intend by this to commit ourselves upon a point not involved in the present case.

The decree of the chancellor reversed, and bill dismissed without prejudice.

A petition for re-argument was filed by the counsel for defendant in error, but the court refused to grant it.